**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

United States of America,

Plaintiff,

v.

$69,753.00 in United States Currency,

Defendant.

No. CV-26-04473-PHX-SMM

**ORDER**

This matter is before the Court on the United States' Motion to Stike. (Doc. 23). Claimant filed a response. (Doc. 24). The United States did not file a reply. For the following reasons, the Court grants the United States' Motion.

## I. BACKGROUND

The Defendant Property was seized by United States Drug Enforcement Administration ("DEA") agents at Phoenix Sky Harbor Airport on January 5, 2026. (Doc. 1 ¶¶ 4-5). The Defendant Property was in the possession of Jie Stovell ("Stovell") when it was seized. (Id. ¶ 6). The DEA initiated administrative forfeiture of the Defendant Property. (Id. ¶ 74). Stovell did not file a claim in the administrative proceeding and has not filed a claim in this case. (Id. ¶ 75). On April 24, 2026, Jonathan Querisma ("Claimant") filed a claim in the administrative proceeding. (Id. ¶ 76). Following an investigation, the DEA referred the Defendant Property to the U.S. Attorney's Office for the District of Arizona for judicial forfeiture review. (Id. ¶¶ 120-21).

On June 26, 2026, the government filed its Verified Complaint. (Id.) The Court

issued a Warrant of Arrest In Rem, which the United States Marshals Service executed upon the Defendant Property on July 7, 2026, establishing the Court's in rem jurisdiction over the Defendant Property. (Docs. 3-4). On July 20, 2026, Claimant filed a Statement of Claimant Ownership. (Doc. 5). In lieu of filing an Answer to the Verified Complaint, Claimant filed a Motion to Dismiss on August 19, 2026. (Doc. 10). On August 21, 2026, the United States served Claimant with Special Interrogatories under Supplemental Rule G(6). (Doc. 11). Claimant served the United States with his Responses to the Special Interrogatories ("Responses" or "Claimant's Responses") on August 24, 2026. (Doc. 23-3).

In his Responses, Claimant confirmed under penalty of perjury what he previously represented to DEA agents: that he had invested in Stovell's dog-breeding business and believed the Defendant Property to be currency he gave Stovell as that investment. (Docs. 23-1 ¶ 1; 1 ¶¶ 83, 113). Claimant also confirmed that a document he provided to investigators is the complete contract (the "Contract") that he and Stovell entered into for the investment. (Doc. 23-1 ¶ 2). Claimant averred that he had provided the Defendant Property to Stovell in accordance with the Contract. (Id. ¶ 11; Doc. 23-2).

The Contract between Claimant and Stovell, dated December 12, 2025 and signed by both parties, provides that Claimant would provide $75,000 to invest in Stovell's dog-breeding venture. (Doc. 23-1 ¶¶ 3, 4, 8). Stovell would provide a total return to Claimant of $100,000, which would be paid in monthly installments of $12,500. (Id. ¶5). The Contract stated that Claimant could demand the return of his investment if he felt "unsure" or questioned the progress of "the financial return." (Id. ¶ 6). Stovell would then have to return the full investment within 30 days or be in default. (Id.) In the event of default, or if he failed to make timely payments, Stovell would owe Claimant $200,000. (Id. ¶ 7). Stovell agreed in the event of default to "sign over" a box truck for a fair market value determined by Claimant, and to pay any remaining debt in cash. (Id.)

## II. LEGAL STANDARD

### A. Civil Forfeiture Standard

The Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), 18 U.S.C. § 983, governs this *in rem* civil forfeiture action. United States v. Real Prop. Located at 17 Coon Creek Rd., Hawkins Bar California, Trinity Cnty., 787 F.3d 968, 972 (9th Cir. 2015) (citation omitted). CAFRA provides that all claims asserting an interest in seized property in which the United States filed a civil forfeiture complaint comply with the Supplemental Rules for or Certain Admiralty and Maritime Claims. 18 U.S.C. § 983(a)(4)(A); see also Fed. R. Civ. P. Supp. R. (G)(1).

Under Supplemental Rule G(6), the government is permitted "'to file limited interrogatories at any time after the claim is filed to gather information that bears on the claimant's standing.'" United States v. $133,420.00 in U.S. Currency, 672 F.3d 629, 635 (9th Cir. 2012) (quoting Supplemental Rule G Advisory Committee Notes (subdivision (6))). Supplemental Rule G(8)(c)(i)(B) permits the government to move the court to strike a claim "because the claimant lacks standing." A motion to strike may be presented "as a motion for judgment on the pleadings. . .or summary judgment whether the claimant can carry the burden of establishing standing by a preponderance of the evidence." Fed. R. Civ. P. Supp. R. G(8)(c)(ii)(B). "Although the burden of proving that the property is subject to forfeiture is on the government, 18 U.S.C. § 983(c), the burden of establishing standing is on the claimant." United States v. $133,420.00 in U.S. Currency, 672 F.3d 629, 644 (9th Cir. 2012) (citation omitted). A motion to strike "must be decided before any motion by the claimant to dismiss the action." Fed. R. Civ. P. Supp. R. G(8)(c)(ii)(A).

CAFRA also contains an "innocent owner" defense. See 18 U.S.C. § 983(d). Under this defense, the claimant has the burden of showing he is an innocent owner by a preponderance of the evidence. Id. An "innocent owner" is one who "did not know of the conduct giving rise to forfeiture," or "upon learning of the conduct giving rise to forfeiture, did all that reasonably could be expected under the circumstances to terminate

such use of the property." Id. § 983(d)(2)(A)(i)-(ii); see United States v. $493,850 in U.S. Currency, 518 F.3d 1159, 1170 (9th Cir. 2008) (citing standard).

**B. Summary Judgment Standard**

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010). "Where the moving party meets that burden, the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial." Id. As the Ninth Circuit has said, "[t]his burden is not a light one." Id. To meet this burden, the "non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." Id. Additionally, parties opposing summary judgment are required to "cit[e] to particular parts of materials in the record" establishing a genuine dispute or "show[ ] that the materials cited do not establish the absence ... of a genuine dispute." Fed. R. Civ. P. 56(c)(1).

## III. DISCUSSION

The United States moves to strike Claimant's claim for lack of standing under Supplemental Rule G(8)(c)(i)(B). (Doc. 23). The United States contends that Claimant's

theory of ownership of the Defendant Property is that he is "the lawful and rightful owner," has "a valid, good faith, and legally recognizable interest in the property," and the "exact cash seized belongs to [Claimant], was given to Jie Stovell in cash from personal possession." (Id. at 6). The United States also contends that Claimant voluntarily relinquished ownership of the Defendant Property to Stovell, Claimant is a creditor of Stovell, the Contract does not create a secured interest in the Defendant Property. (Id. at 6-7). The United States, therefore, contends that Claimant does not possess the type of ownership interest in the Defendant Property that establishes standing in a civil forfeiture case. (Id. at 7).

In response, Claimant contends that he "remained the true legal owner of the Defendant Currency, having placed the funds in the temporary possession of his assistant pursuant to an express written contract" and "[b]ecause the contract explicitly preserve's [his] right to reclaim the funds at any given moment, [he] retains an absolute ownership interest and constructive possession of the property." (Doc. 24 at 2).

Article III standing must be determined as a threshold matter in every federal case. State of Nevada v. Burford, 918 F.2d 854, 856 (9th Cir. 1990). "To demonstrate Article III standing in a civil forfeiture action, a claimant must have 'a sufficient interest in the property to create a case or controversy.'" United States v. Real Prop. Located at 475 Martin Lane, Beverly Hills, CA, 545 F.3d 1134, 1140 (9th Cir. 2008) (quoting United States v. 5208 Los Franciscos Way, 385 F.3d 1187, 1191 (9th Cir. 2004). At the early stages of a forfeiture suit, this burden is not a heavy one. Id. A "claimant need demonstrate only a colorable interest in the property, for example, by showing actual possession, control, title, or financial stake." Id.

At the motion to strike stage, "a claimant must allege that he has an ownership or other interest in the forfeited property." United States v. $191,910.00 in U.S. Currency, 16 F.3d 1051, 1057 (9th Cir. 1994), superseded on other grounds as stated in United States v. $80,180.00 in U.S. Currency, 303 F.3d 1182, 1184 (9th Cir. 2002). The Ninth Circuit has consistently held that unsecured creditors of the person whose property was

seized lack a sufficient property interest to have standing to challenge the forfeiture. See United States v. $20,193.39 in U.S. Currency, 16 F.3d 344, 346 (9th Cir. 1994); see also United States v. One Hundred Thirty–Three (133) U.S. Postal Serv. Money Orders Totaling $127,479.24 in U.S. Currency, 496 F. App'x. 723, 724 (9th Cir. 2012); see also 18 U.S.C. § 983(d)(6)(B)(i) (excluding "a person with only a general unsecured interest in, or claim against, the property or estate of another" from the definition of "owner"). As the Ninth Circuit has explained, "[u]nlike secured creditors, general creditors cannot claim an interest in any particular asset that makes up the debtor's estate." $20,193.39 in U.S. Currency, 16 F.3d at 346. Therefore, "unsecured creditors do not have standing to challenge the civil forfeiture of their debtors' property." Id.

Here, Claimant does not dispute that he agreed in the signed Contract to invest $75,000 in Stovell's dog-breeding business and that he gave Stovell $75,000 in performance of the Contract. (Doc. 23-1 ¶¶ 1, 4, 11). Thus, Claimant became a creditor and Stovell became a debtor.

The classification of a debt as secured or unsecured depends on state law, so the Court must first determine which state's law applies here. See Butner v. United States, 440 U.S. 48, 55 (1979). Where jurisdiction is not grounded in diversity, a federal court applies the choice of law rules of the forum in which it sits, unless there is a uniquely federal interest to be protected by supplanting federal common law. California Dep't of Toxic Substances Control v. Jim Dobbas, Inc., 54 F.4th 1078, 1089 (9th Cir. 2022). Here, there is not a unique federal interest in the classification of secured and unsecured debt, Butner, 440 U.S. at 55, and the forum state is Arizona.

Arizona has adopted the "most significant relationship" test set forth in the Restatement (Second) of Conflict of Laws. See Bates v. Super. Ct., 749 P.2d 1367, 1369 (Ariz. 1988). The law of the state with the most significant relationship to an issue governs. See id. Relevant factors include "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil[e], residence, nationality, place of

incorporation and place of business of the parties." Aries v. Palmer Johnson, Inc., 735 P.2d 1373, 1381 (Ariz. App. 1987) (quoting Restatement (Second) of Conflict of Laws § 188(2)).

Here, it is undisputed that the Contract was notarized in Florida, and Claimant and Stovell executed the Contract in Florida. (Doc. 23 at 8). No place of performance is specified in the Contract nor is there a fixed location of performance. (Id.) At the time Claimant entered into the Contract, he was a resident of Florida, but Stovell had a Georgia driver's license at the time of the seizure, had an LLC registered in Georgia and received Elctronic Benefit Transfer ("EBT") in Georgia. (Id.) Here, nearly all the factors demonstrate that Florida has the most significant relationship to the Contract. Notably, the Contract was signed and notarized in Florida, and Claimant is a Florida resident. Thus, the Court will apply Florida law.

Article 9 of Florida's UCC governing secured transactions is found in Chapter 679, Florida Statutes. HSBC Bank USA, N.A. v. Perez, 165 So.3d 696, 699 (Fla. 4th DCA 2015). Chapter 679 applies to "[a] transaction, regardless of its form, that creates a security interest in personal property or fixtures by contract." Fla. Stat. Ann. § 679.1091. Under Florida law, for a creditor to become a secured party, the creditor must take special steps such as attachment and perfection of a security interest." See id. § 679.2031. "A security interest in collateral is enforceable against the debtor, along with third parties, when: (1) value has been given; (2) the debtor has rights in the collateral or the power to transfer collateral rights to a secured party; and (3) the debtor has signed a security agreement that describes the collateral, among other unrelated options." Westlake Flooring Co., LLC v. Miami Motorsports, LLC, 423 So.3d 894, 900 (Fla. Dist. Ct. App. 2025); § 679.2031(2)(a)-(c). If these requirements are not met, the security interest does not attach to the collateral, even if the parties intended it to. § 679.2031(1).

Here, the United States contends that the Contract does not reflect any intention or attempt to create a security interest in specific currency held by Stovell. (Doc. 23 at 9). The United States further contends that the Contract does not give Claimant rights in

collateral, nor is there an actual signed security agreement, and the Defendant Property was not in Claimant's possession after conveyance to Stovell. (Id.) Instead, the United States argues that the Contract establishes that Stovell was to pay Claimant a sum certain (i.e. $12,500 per month until $100,000 was paid), that Claimant had a right to substantial liquidated damages in the event of default and that Claimant had the right to terminate the agreement at will, at which point Stovell had the option of returning Claimant's investment within 30 days or defaulting. (Id.) Therefore, the United States contends that none of the Contract's provisions create a secured interest in the Defendant Property, and that Claimant is, at best, an unsecured creditor of Stovell. (Id.)

In response, Claimant contends that he retained ownership and constructive possession of the Defendant Property via a valid bailment agreement. (Doc. 24 at 4). Claimant cites two cases in support of his position. (See id.) Upon review of those cases, the Court finds that the cases do not apply. The facts in Claimant's cited Ninth Circuit case are akin to Stovell having standing to challenge the forfeiture of the Defendant Property. See United States v. $191,910.00 in U.S. Currency, 16 F.3d 1051, 1058 (9th Cir. 1994) ("[C]laimant's assertion that he was carrying the money for his sibling or spouse would be sufficient indication that the claimant was a possessor.").

Claimant also cites a non-binding Eleventh Circuit case. United States v. $38,000.00 Dollars in U.S. Currency, 816 F.2d 1538 (11th Cir. 1987). Since whether a party has Article III standing is a product of federal law, this Court is only bound by decisions of the Ninth Circuit and Supreme Court. See Hart v. Massanari, 266 F.3d 1155, 1171-72 (9th Cir. 2001) But, even if this Court were bound by the Eleventh Circuit, the case is about bailments and is irrelevant here. Under Florida law, a bailment is "a contractual relationship among parties in which the subject matter of the relationship is delivered temporarily to and accepted by one other than the owner." S & W Air Vac Sys., Inc. v. Dep't of Revenue, State of Florida, 697 So.2d 1313, 1315 (Fla. 5th DCA 1997). In other words, "[e]ntrusting your stuff to others is a bailment." Carpenter v. United States, 585 U.S. 296, 399 (2018) (Gorsuch, J., dissenting). Further, "a bailment involves a

change in possession but not in title." Bailment, Black's Law Dictionary (12th ed. 2024) (emphasis added).

Claimant contends that his relationship with Stovell is a "classic bailment," and that he delivered the Defendant property to his assistant, Stovell, for a specific business purpose, "while explicitly retaining the right to absolute dominion and immediate retrieval." (Doc. 24 at 4). The Court disagrees. The Contract does not include any language reflecting this alleged agency and/or bailment arrangement. (See Doc. 23-2 at 13). In fact, the Contract depicts the Defendant Property as an investment in Stovell's dog breeding business and that he voluntarily relinquished ownership of the Defendant Property to Stovell. (See id.)

A person who loans money, absent a security interest in those specific funds, transfers possession, control, and title in loaned funds to the borrower. See Livingston's Ex'x v. Story, 36 U.S. 351, 388 (1837) ("By this kind of contract, the possession of the property is transferred to the person advancing the money"); see, e.g., United States v. $105,180 in U.S. Currency, No. CV-12-08122-PCT-DGC, 2013 WL 2153326, at *6 (D. Ariz. May 17, 2013) (an affidavit and promisor note show that the lender "gave up his ownership interest in those funds in exchange for a right to repayment and potential earnings as set forth in the note" and lacks standing); see also United States v. $9,250.00 in U.S. Currency, No. CIV 09-2468-PHX-MHB, 2010 WL 3168628, at *4 (D. Ariz. Aug. 10, 2010) (a claimant who loaned money seized for forfeiture but has no evidence of a secured interest is a general unsecured creditor without standing).[1]

Here, the record does not reflect any intention or attempt to create a security interest in the Defendant Property. The Contract does not give Claimant rights in collateral, nor is there a signed security agreement. Under Florida law, Claimant must demonstrate that he has rights in the collateral or the power to transfer collateral rights to

[1] Also, Claimant's interest in the Defendant Property is akin to abandoned property. The case law is well-established that "[i]f a person has voluntarily abandoned property, he has no standing to complain of its search and seizure." United States v. Cella, 568 F.2d 1266, 1283 (9th Cir. 1977).

a secured party and that Stovell has signed a security agreement that describes the collateral. Westlake Flooring Co., LLC, 423 So.3d at 900; Fla. Stat. Ann. § 679.2031(2)(a)-(c). Claimant demonstrates neither. Instead, the Contract establishes that Stovell must pay Claimant a sum certain (i.e. $12,500 per month until $100,000 was paid) and that Claimant has a right to substantial liquidated damages in the event of default. Claimant had the right to terminate the agreement at will, at which point Stovell had the option of returning Claimant's investment within 30 days or defaulting. Claimant, however, has failed to allege and submit any evidence of a secured interest in the funds carried by Stovell. At most, the record demonstrates that Claimant's status is that of a general unsecured creditor.

Further, it is undisputed that Claimant did not possess the Defendant Property at the time of seizure, and, under 18 U.S.C. § 983(d)(6)(B)(i), which governs the "innocent owner defense," an owner does not include "a person with only a general unsecured interest in, or claim against, the property or estate of another." Claimant also cites no case law in which an unsecured creditor of the person from whom currency is seized has been found to have standing as a co-owner of that currency. Thus, the Court grants the United States' Motion.[2]

## IV. CONCLUSION

The United States has carried its burden of showing the Claimant cannot establish standing by a preponderance of the evidence. Fed. R. Civ. P. Supp. R. G(8)(c)(ii)(B). As explained above, the undisputed facts demonstrate that Claimant is an unsecured creditor. But "unsecured creditors do not have standing to challenge the civil forfeiture of their debtors' property." $20,193.39 in U.S. Currency, 16 F.3d at 346. Thus, Claimant lacks standing to pursue his claim in this civil forfeiture action.

Accordingly,

**IT IS ORDERED granting** the United States' Motion to Strike. (Doc. 23).

---

[2] The Court will not address the United States' alternative argument that Claimant lacks statutory standing because he failed to timely file and serve a response to the Verified Complaint under Supplemental Rule G(5)(b). (Doc. 23 at 10).

**IT IS FURTHER ORDERED striking** Claimant's Statement of Claimant Ownership. (Doc. 5).

**IT IS FURTHER ORDERED denying** Claimant's Motion to Dismiss as **moot**. (Doc. 10).

**IT IS FURTHER ORDERED denying** Claimant's Motion for Hearing as **moot**. (Doc. 22).

Dated this 22nd day of September, 2026.

Stephen M. McNamee
Senior United States District Judge